UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

TRAVELERS PROPERTY CASUALTY CO.
OF AMERICA, a foreign corporation,

    Plaintiff,

v.

AXEL LIMITED COMPANY, LLC d/b/a
SMARTPHONES EXPERTS, a Florida
Limited Liability Company,

    Defendant.

CASE NO. 5:15-cv-00237-RBD-PRL

## FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF

Plaintiff TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA ("Travelers"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 15(a)(1)(B) and Local Rule 4.01, sues and files this First Amended Complaint[1] against Defendant AXEL LIMITED COMPANY, LLC d/b/a SMARTPHONES EXPERTS ("Axel") for declaratory relief and states:

### JURISDICTION AND VENUE

1. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) based upon the diversity of the citizenship of the parties and the provisions of the Federal Declaratory Judgment Act to declare the rights and obligations of the parties under certain policies of insurance.

---

[1] This First Amended Complaint removes Count II of the initial complaint, related to payment of the deductible, which is now moot, and adds additional factual allegations regarding the demand made by Axel to Travelers at ¶¶ 6-9. The First Amended Complaint is otherwise substantially identical to the original pleading. Travelers is also filing a formal response to Axel's Motion to Dismiss [D.E. 17].

3. The amount in controversy is in excess of this Court's minimum jurisdictional amount of $75,000.00, exclusive of interest, costs, and attorneys' fees. The insured has claimed indemnity for $150,000.00 in fines owed to Visa and MasterCard as a result of an alleged data breach, and a total of approximately $750,000.00 in total costs incurred as a result of the alleged data breach. Furthermore, the policy limits are $3,000,000.00 per "wrongful act" and in the aggregate.

4. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §§ 1391(a) and (b), because the defendant is a resident of the state of Florida and because the defendant is located in Inverness, Florida, which is located in this district and division thereof.

5. All conditions precedent to the filing of this action have occurred or have been complied with.

6. Pursuant to the requirements of 28 U.S.C. § 2201 and Article III of the United States Constitution, a case or controversy exists and has existed between the parties since the beginning of this action, such that an action for declaratory judgment is ripe and appropriate.

7. On October 16, 2014, George Wentz, whose firm represented Axel, sent an email to Thomas Propson, the adjuster at Travelers who was handling the adjustment of this matter. This email stated, "My client has incurred ***over $750,000.00*** to date that ***I think should be covered.*** We need to get this squared away properly asap." *See* [D.E. 20-2] (emphasis added).

8. On April 16, 2015, Axel's counsel in this matter sent an email to Mr. Propson, in response to a request for payment of the deductible, stating that "there are remaining claims that Travelers has not resolved representing losses suffered by our client. These total hundreds of thousands of dollars." *See* [D.E. 20-3].

9. Mr. Propson then responded, stating that Travelers would refrain from negotiating the check if requested by Axel to do so, but maintained its right to collect the deductible from Axel. Mr. Propson included as an attachment to this email Travelers' coverage position letter, which had previously been provided to Axel. This letter plainly stated Travelers' coverage position—that based on the information it had been provided, none of the costs incurred by Axel were covered. The reservation of rights can be found at [D.E. 20-4].

## PARTIES

10. At all times material to this action, Plaintiff Travelers is and was a Connecticut corporation with its principal place of business in Hartford, Connecticut. Plaintiff is and was a citizen of Connecticut.

11. Upon information and belief, at all times material to this action, Defendant Axel is and was a Florida limited liability company with its principal place of business in Inverness, Florida. A limited liability company is a citizen of any state of which a member of the company is a citizen. *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004).

12. Upon information and belief, at all times material to this action, Axel had two members, Marcus E. Adolfsson and Alteraxion Corp.

13. Upon information and belief, at all times material to this action, Marcus E. Adolfsson was a resident of the state of Florida. Marcus E. Adolfsson is and was a citizen of Florida.

14. Upon information and belief, at all times material to this action, Alteraxion Corp. was a Florida corporation with its principal place of business in Key Biscayne, Florida. Alteraxion Corp. is and was a citizen of Florida.

Fowler White Burnett P.A. • One Financial Plaza, Suite 2100, 100 Southeast Third Avenue, Fort Lauderdale, FL 33394 • (954) 377-8100

15. Axel is a citizen of every state in which any of its members is a citizen. Accordingly, Axel is and was a citizen of Florida.

## FACTUAL ALLEGATIONS

16. Plaintiff Travelers issued a CyberFirst Liability Policy to Axel, policy number ZPL-13S24518-13-I5, with effective dates of July 8, 2013 to July 8, 2014 (the "Policy"). A certified copy of the Policy is attached heretofore as **Exhibit "A"** and is fully incorporated herein.

17. Subject to the CyberFirst General Provisions, the Policy included, in relevant part, Network and Information Security Liability ("NAISL") coverage and CyberFirst Technology Errors and Omissions Liability ("E&O") coverage.

18. The Policy had limits of $3,000,000.00 per occurrence and $3,000,000.00 aggregate, with a deductible of $10,000.00. *See* **Exhibit "A".**

19. The CyberFirst General Provisions Form provides, in pertinent part:

**SECTION I – COVERAGE**

**1. Defense of Claims or Suits**

a. We will have the right and duty to defend the insured against any claim or "suit" seeking damages for loss to which the insurance provided under one or more of "your cyber liability coverage forms" applies, if no provider of other insurance has a duty to defend the insured against that claim or "suit". However, we will have no duty to defend the insured against any claim or "suit" seeking damages for loss to which the insurance provided under "your cyber liability coverage forms" does not apply.

We will also have the right and duty to defend the insured against any "suit" seeking injunctive relief for loss to which the insurance provided under one or more of "your cyber liability coverage forms" applies, if no provider of other insurance has a duty to defend that "suit". However, we will have no duty to defend the insured against any "suit" seeking injunctive relief for loss to

- 4 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

which the insurance provided under "your cyber liability coverage forms" does not apply.

When we defend a claim or "suit" against an insured, we will pay reasonable "defense expenses". Payment of such "defense expenses" will reduce the available limits of insurance.

We may, at our discretion, investigate any "wrongful act" or claim and settle any claim or "suit". But our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments, settlements or "defense expenses".

******

c. We will have no other obligation or liability to pay sums or perform acts or services unless explicitly provided for under Supplementary Payments or under "your cyber liability coverage forms".

20. The CyberFirst General Provisions Form also includes the following relevant exclusions:

**3. Exclusions Applying To All Of Your Cyber Liability Coverage Forms**

The following exclusions apply to all coverages provided under "your cyber liability coverage forms". These exclusions are in addition to the exclusions contained in each such coverage form and that apply only to the coverage provided under such coverage form.

The insurance provided under "your cyber liability coverage forms" does not apply to:

******

**g. Government Demands or Proceedings**

Any demand made or proceeding brought by:

(1) The Federal Trade Commission;

(2) The Federal Communications Commission; or

(3) Any other federal, national, state, local, or foreign government, agency, or entity.

- 5 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

This exclusion does not apply to any claim made or "suit" brought by or on behalf of a federal, national, state, local, or foreign government, agency, or entity in its capacity as your customer.

21. The CyberFirst General Provisions Form also includes the following conditions of coverage:

**SECTION V – CYBER LIABILITY CONDITIONS**

\*\*\*\*\*\*

**2. Duties In The Event Of A Claim Or Suit**

**a.** If a claim or "suit" is made or brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us in writing of the claim or "suit" as soon as practicable, but in no event after the policy period or the Basic Extended Reporting Period, or the Supplemental Extended Reporting Period if such reporting period is provided.

**b.** You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of loss to which the insurance provided under any of "your cyber liability coverage forms" may also apply.

**c.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

22. The CyberFirst General Provisions Form also includes the following relevant definitions:

**SECTION VII – DEFINITIONS**

\*\*\*\*\*\*

**6.** "Defense expenses":

**a.** Means any of the following fees, costs or expenses which can be directly allocated to a particular claim or "suit":

    (1) Fees of attorneys, or other authorized representatives where permitted, for legal services, whether by outside or staff representatives; or

    (2) Court, alternative dispute resolution, and other specific items of expense, whether incurred by an outside vendor or by one of our employees; including:

        (a) Expert testimony;

        (b) Autopsy;

        (c) Witnesses and summonses;

        (d) Copies of documents such as birth and death certificates and medical treatment records;

        (e) Arbitration fees;

        (f) Fees or costs for surveillance or other professional investigations which are conducted as part of handling of a claim or "suit"; and

        (g) Fees or costs for loss prevention and engineering services which are conducted as part of handling of a claim or "suit".

**b.** Does not include:

    (1) Our expenses, including salaries, overhead and traveling expenses of our employees, except for those fees, costs or expenses described in Paragraphs a.(1) and a.(2) above incurred while handling a claim or "suit".

(2) Fees paid to independent claims professionals or attorneys (hired to perform the function of claim investigation normally performed by claim adjusters), for developing and investigating a claim so that a determination can be made of the cause, extent or responsibility for the loss, including evaluation and settlement of covered claims.

******

**23.** "Wrongful act" means any of the following:

a. Errors and omissions wrongful act, if the CyberFirst Technology Errors And Omissions Liability Coverage Form is part of your policy.

b. Network and information security wrongful act, if the CyberFirst Network And Information Security Liability Coverage Form is part of your policy;

c. Communications and media wrongful act, if the CyberFirst Communications And Media Liability Coverage Form is part of your policy.

23. The CyberFirst Network and Information Security Liability Coverage Form includes the following applicable provisions:

**SECTION I – NETWORK AND INFORMATION SECURITY LIABILITY COVERAGE**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of loss to which this insurance applies. The amount we will pay for damages is limited as described in Section III – Limits Of Insurance in your CyberFirst General Provisions Form.

**b.** This insurance applies to loss only if:

(1) The loss is caused by a "network and information security wrongful act" committed in the "coverage territory";

(2) The "network and information security wrongful act" was not committed before the Network and Information

Security Retroactive Date shown in the CyberFirst Declarations or after the end of the policy period; and

(3) A claim or "suit" by a person or organization that seeks damages because of the loss is first made or brought against any insured, in accordance with Paragraph e. below, during the policy period and first reported to us, in accordance with Paragraph f. below, during the policy period or during the Basic Extended Reporting Period we provide under Section VI – Extended Reporting Periods in your CyberFirst General Provisions Form.

If we provide the Supplemental Extended Reporting Period under Section VI – Extended Reporting Periods in your CyberFirst General Provisions Form, this insurance also applies to claims or "suits" that seek damages because of the loss that are first made or brought against any insured, in accordance with Paragraph e. below, during the policy period or during the Supplemental Extended Reporting Period and first reported to us, in accordance with Paragraph f. below, during such reporting period.

**c.** Each "network and information security wrongful act" in a series of "related network and information security wrongful acts" will be deemed to have been committed on the date the first wrongful act in that series is committed.

**d.** If no Network and Information Security Retroactive Date is shown in the CyberFirst Declarations, the Network and Information Security Retroactive Date will be deemed to be the first day of the policy period.

**e.** A claim or "suit" by a person or organization that seeks damages will be deemed to have been first made or brought against any insured at the earlier of the following times:

(1) When we or any "described authorized person" first receives written notice of such claim or "suit", whichever is first; or

(2) When we first receive written notice from any insured of a specific "network and information security wrongful act" that caused the loss which resulted in such claim or "suit".

All claims or "suits" that seek damages because of loss caused by the same "network and information security wrongful act" or

- 9 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

"related network and information security wrongful acts" will be deemed to have been first made or brought against any insured at the time the first of those claims is first made or brought against any insured.

**f.** A claim or "suit" by a person or organization that seeks damages will be deemed to have been first reported to us at the earlier of the following times:

>(1) When we first received written notice of such claim or "suit" from any insured or the person or organization making the claim or bringing the "suit", whichever is first; or

>(2) When we first receive written notice from any insured of a specific "network and information security wrongful act" that caused the loss which resulted in such claim or "suit".

All claims or "suits" that seek damages because of loss caused by the same "network and information security wrongful act" or "related network and information security wrongful acts" will be deemed to have been first reported to us at the time the first of those claims or "suits" is first reported to us.

**g.** A claim or "suit" by a person or organization that seeks damages will be deemed to have been first made or brought and reported to us at the time we receive written notice from any insured of a specific "network and information security wrongful act" only if that notice contains all of the following information:

>(1) How, when and where the "network and information security wrongful act" was committed;

>(2) A description of what happened;

>(3) A description of what damages may result;

>(4) The identity of the person or organization that may make a claim or bring a "suit";

>(5) The identity of each insured that committed the "network and information security wrongful act".

Notice to us that:

- 10 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

(1) All or part of one or more of any insured's acts or omissions may in the future be discovered to be a "network and information security wrongful act"; or

(2) Any insured may in the future receive written notice of a "network and information security wrongful act", claim, or "suit";

is not notice of a specific "network and information security wrongful act".

24. The CyberFirst Network and Information Security Liability Coverage Form also includes the following exclusions:

**2. Exclusions**

The following exclusions apply only to the coverage provided under this form. These exclusions apply in addition to the exclusions in Paragraph 3. of Section I – Coverage in your CyberFirst General Provisions Form.

This insurance does not apply to:

\*\*\*\*\*\*

**c. Fines or Penalties**

Any fine or penalty imposed by law or regulation, or that any insured has agreed to pay for any reason.

This exclusion does not apply to punitive or exemplary damages.

25. Finally, the CyberFirst Network and Information Security Liability Coverage Form also includes the following definitions:

**SECTION II – DEFINITIONS**

1. "Authorized user" includes your customer, supplier, or supporter.

2. "Computer virus" means malicious code that is introduced through your web-site or "your computer or communications network". Once introduced, such code may destroy, alter, contaminate or degrade the integrity, quality or performance of

- 11 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

data of any computer application software, computer network, or computer operating system or related network.

******

5. "Network and information security wrongful act" means any of the following committed by or on behalf of an insured in the conduct of your business:

    a. Failure to prevent the transmission of a "computer virus".

    b. Failure to provide any "authorized user" of your web-site or "your computer or communications network" with access to such website or such computer or communications network.

    c. Failure to prevent unauthorized access to, or use of, electronic data containing private or confidential information of others.

******

8. "Related network and information security wrongful acts" means two or more "network and information security wrongful acts" that have as a common connection, tie, or link any fact, circumstance, situation, event, transaction, cause, or series of related facts, circumstances, situations, events, transactions, or causes.

9. "Your computer or communications network" means any computer or communications network that you rent, lease, license, or borrow from others, own or operate.

26. This declaratory relief action concerns a claim arising out of an alleged attack on Axel's data network – in particular, those servers included in Axel's processing of credit card payments.

27. On or about July 9, 2013, Axel received an email from Bank of America Merchant Services notifying Axel that MasterCard had prepared a report identifying Axel as the common point of purchase for fraudulent charges. That email is attached heretofore as **Exhibit "B".**

- 12 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

28. Accordingly to the report:

> "4,457 transactions [were] processed by Smart Phone Experts during the timeframe of November 1, 2012 through May 31, 2013. MasterCard suspects that 18,118 accounts processed during this timeframe are potentially at risk. MasterCard has indicated the accounts contained in the attached report have reported experiencing fraudulent charges after being used as Smart Phone Experts and that fraud is still being reported on cards processed through June 2013."

29. Bank of America Merchant Services also advised Axel that "MasterCard…request[ed] [that] Bank of America Merchant Services…begin a preliminary investigation."

30. Bank of America Merchant Services further advised Axel that "Because of the fraud being reported and number of credit card accounts believed to be at risk, MasterCard is requesting that forensic analysis performed on the POS environment at Smart Phone Experts by an approved PCI Forensic Investigator (PFI)."

31. Finally, Bank of America Merchant Services advised Axel of the "financial penalties that may be assessed as a result of the improper storage of cardholder data and/or in the event that this data is compromised."

32. Pursuant to the email from Bank of America, on or about July 10, 2013, Axel contacted and retained Mandiant, an approved PFI, to perform an investigation into the circumstances surrounding the alleged breach.

33. Axel reported the Bank of America Merchant Services email to Travelers on or about July 11, 2013.

34. In response, Travelers acknowledged receipt of the claim, reserved its rights, and requested additional information regarding the alleged breach.

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

35. Pursuant to data breach laws of several states and United States territories, Axel retained the firm of Baker Hostetler to prepare notices to data subjects whose personally identifiable information ("PII") may have been breached.

36. Notices to the data subjects allegedly included offers of 12 months of free credit monitoring.

37. Similarly, Baker Hostetler allegedly prepared notices to various regulators and states' attorneys general.

38. The costs incurred by Axel to notify the data subjects and regulators were first-party costs—costs that Axel incurred itself in meeting its obligations under various laws and regulations.

39. The costs incurred by Axel in retaining Mandiant to perform a forensic investigation were also first-party costs incurred by Axel in meeting its obligations under its agreements with Visa and MasterCard.

40. These costs were not "sums that [A]xel becomes legally obligated to pay as damages because of loss to which" the Policy applies.

41. In fact, at all times material to this action, Travelers offered an endorsement providing coverage for security breach notification and remediation expenses.

42. Axel did not purchase this endorsement.

43. As a result of the alleged attack and the findings of the Mandiant investigation, Visa and MasterCard allegedly levied a $150,000.00 fine against Axel, pursuant to the companies' merchant agreements.

44. Axel also allegedly retained Baker Hostetler to represent it with respect to the fines levied by Visa and MasterCard.

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

45. Pursuant to the issuing agreements between Visa and MasterCard and Bank of America, in the event of fraudulent purchases, Bank of America allegedly bears the risk of loss, and must indemnify Visa and MasterCard for fraudulent charges.

46. Accordingly, Visa and MasterCard suffered no consequential damages as a result of the data breach.

47. Furthermore, neither Visa nor MasterCard ever claimed to have suffered consequential damages as a result of the Axel data breach.

48. Thus, the alleged $150,000.00 fine levied by MasterCard and Visa against Axel is a fine or penalty, and is not related to any consequential damages suffered by MasterCard or Visa as a result of the breach, because Visa and MasterCard suffered no consequential damages.

49. In fact, in the initial correspondence from Bank of America Merchant Services, Bank of America characterized the arrangement thusly: "Please be aware of the *financial penalties* that may be assessed as a result of the improper storage of cardholder data and/or in the event that this data is compromised." *See* **Exhibit "B".**

50. The Policy does not cover claims for fines under credit card merchants' agreements, and thus the Visa and MasterCard fines are not claims for "damages because of loss to which the" Policy applies.

51. Accordingly, Travelers had neither a duty to pay for Axel's defense to the Visa and MasterCard fines, nor did Travelers have a duty to indemnify Axel for the payment of the fines.

52. On or about January 13, 2014, the Federal Trade Commission ("FTC") allegedly tendered a "Civil Investigative Demand" to "SmartPhone Experts".

- 15 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

53. The FTC Demand allegedly required responses to a series of interrogatories related to Axel's data security procedures and the alleged breach.

54. The Policy's "Government Demands or Proceedings" exclusion expressly precludes coverage for "[a]ny demand made or proceeding brought by…[t]he Federal Trade Commission[.]"

## COUNT I – DECLARATORY RELIEF (COVERAGE)

55. Plaintiff Travelers hereby incorporates by reference and restates paragraphs 1-54 as if fully stated herein.

56. The costs incurred by Axel to notify data subjects and regulatory agencies of its data breach, as well as obtain a forensic investigation, are not covered under the Policy because they are not "sums that [Axel] [became] legally obligated to pay as damages because of the loss to which" the Policy applies.

57. The fines and/or penalties levied by Visa and MasterCard as a result of the data breach are not covered under the Policy because they are not claims for "damages because of loss to which the" Policy applies.

58. The fines and/or penalties levied by Visa and MasterCard as a result of the data breach are not covered under the Policy because of the Fines or Penalties Exclusion.

59. Accordingly, Travelers had neither a duty to defend Axel with respect to the fines and/or penalties levied by Visa and MasterCard, nor did Travelers have a duty to indemnify Axel for the fines and/or penalties levied by Visa and MasterCard.

60. The costs incurred by Axel in responding to the FTC Demand are not covered under the Policy because of the "Government Demands Or Proceedings" Exclusion.

- 16 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

61. The Policy provides no coverage for the costs Axel incurred with respect to notifying data subjects and regulatory agencies, the fines and/or penalties levied against it by Visa and MasterCard, and the costs incurred by Axel in responding to the FTC Demand.

62. An actual, present, and justiciable controversy exists between Plaintiff Travelers and Defendant Axel warranting the entry of a declaratory judgment by this Court that the Policy does not provide coverage for the damages claimed.

WHEREFORE, Plaintiff Travelers requests this Court to enter judgment in its favor, declaring that the Policy does not provide coverage for the claims arising from the subject alleged data breach and that Travelers has no duty to defend or indemnify Defendant Axel with respect to said losses. Plaintiff Travelers further requests such other relief as the Court may deem just and appropriate under the circumstances.

Dated: August 20, 2015.

**CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2015, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s/ Rory Eric Jurman
Rory Eric Jurman

- 17 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

Respectfully submitted,

/s/ Rory Eric Jurman
Rory Eric Jurman
Fla. Bar No. 194646
Email: rjurman@fowler-white.com

Aaron M. Dmiszewicki
Fla. Bar No. 111455
Email: admiszewicki@fowler-white.com

FOWLER WHITE BURNETT, P.A.
One Financial Plaza, Suite 2100
100 Southeast Third Avenue
Fort Lauderdale, Florida 33394
Telephone: (954) 377-8100
Facsimile: (954) 377-8101

- 18 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100

## SERVICE LIST

CASE NO. 5:15-CV-237-37 PRL

Marta Colomar-Garcia, Esq.
Brant C. Hadaway, Esq.
Gary Edward Davidson, Esq.
Michael Diaz, Jr., Esq.
Diaz, Reus & Targ, LLP
3400 Miami Tower
100 Southeast 2nd Street
Miami, FL 33131
E-Mail: gdavidson@diazreus.com;
mdiaz@diazreus.com;
mcolomar@diazreus.com;
bhadaway@diazreus.com
Telephone: (305) 375-9220
Facsimile: (305) 375-8050
Attorneys for AXEL LIMITED COMPANY,
LLC d/b/a SMARTPHONES EXPERTS

4842-6715-2423, v. 1

- 19 -

FOWLER WHITE BURNETT P.A. • ONE FINANCIAL PLAZA, SUITE 2100, 100 SOUTHEAST THIRD AVENUE, FORT LAUDERDALE, FL 33394• (954) 377-8100